May 6, 1907.

————o————

No. 4102.

(Court of Appeal, Parish of Orleans.)

SEWERAGE AND WATER BOARD OF NEW ORLEANS
vs. PETER THELAN et als.

1.  The filing of an exception to the mode of procedure, after

322

the filing of an answer to the merits, comes too late and the objection, under the circumstances, must be deemed waived.

2. It is the tendency of jurisprudence to allow amendments, germane to the issue, in furtherance of justice and to avoid a multiplicity of suits.

3. An Appellate Court is reluctant to control the exercise of the discretion vested in the trial judge in such matters, and will not disturb his action, unless it be clearly arbitrary and it deprived the adverse party of some substantial right or means of defense.

4. A witness cannot be permitted to testify by refreshing his memory with the assistance of a book in which the entries were made by another person.

5. The other issues are of fact only.

Appeal from Civil District Court, Divsion "A."

Omer Villere and P. S. Gidierre, for Plaintiff and Appellee.

C. Hunt, H. N. Roberts, Denegre, Blair & Denegre, F. J. Dreyfous, C. Louque, for Defendants and Appellants.

DUFOUR, J. On February 18th, 1903, plaintiff accepted defendant's bid to furnish all labor and material for the alteration of the steam pipe system at the Central Power Station in accordance with certain specifications for the sum of $6340 to be completed on or before April 1st, 1903.

Thelan made arrangements with the Fairbanks Co. to furnish him such material as he might need to carry out his contract, and, on March 4th, 1903, sent the following communication to the engineer of the Drainage Commission:

"I hereby authorize you to pay such bills of the Fairbanks Company for material furnished for work at the Central Power Station, under my contract, as I may approve, and charge the same to my account with the Drainage Commission."

On the same day, the engineer wrote as follows to the Fairbanks Company enclosing a copy of Thelan's letter:

"When he (Thelan) has completed his work satisfactorily he will have to his credit in this office the above amount (over $6000), out of which I will pay you such bills as he approves as being correct for material for this work. I would further state that this office withholds from the contractor an amount equal to all claims filed in this office before his final pay-

ment becomes due until such time as these claims are satisfactorily settled."

On August 24th, 1903, the Fairbanks Co. served on the Sewerage Board an itemized account of the goods sold to Thelan amounting to $4991.64, and a notice that a lien against this material had been placed on record in May.

When Thelan's contract was terminated and the work had been accepted the Board filed a concursus proceeding or interpleader acknowledging a net liability to Thelan of $4985.20 under the contract and for extra work. It was further alleged that one Kolb claimed $600 by virtue of an assignment by Thelan and that the Fairbanks Co. also made a claim on the fund and all three were cited to litigate their respective claims. The Fairbanks Company answered and asserted its right to receive from the funds the sum already mentioned as claimed by it. Thelan's answer admitted the correctness of Kolb's claim and asserted that the Fairbanks Co. had overcharged him by the sum of $1350.32 for which a judgment was asked.

On February 6th, 1906, on joint motion of all parties in interest, the excess of the sum deposited in the registry of the Court over the $1350.32, amount of Thelan's counterclaim, was paid to the Fairbanks Co. Before the cause was tried, Thelan, who had an additional claim against the Sewerage Board for extra work which for reasons personal to himself, he had not previously presented, submitted to the Board a detailed bill therefor. The Board, after due consideration, concluded that the claim was excessive, and, on March 20th, 1906, filed a supplemental petition alleging the amount due for the extra work to be $438.25, which it deposited in the registry of the Court, and which, together with the previous deposit, discharged the Board's debt. This suit, therefore, presents two distinct and separate controversies, one between the Sewerage Board and Thelan, the other between Thelan and the Fairbanks Co.

It was argued in this Court, as a preliminary issue that the proceeding of the Board by interpleader was improper and in opposition to the Code of Practice, the district judge overruled the exception on the ground that the concursus, under the circumstances of the case, was recognized and sanctioned by our jurisprudence. Without questioning the correctness of that view,

324

we shall rest our affirmance of the ruling on the ground that the filing of an answer to the merits, before presenting the exception, must be deemed a waiver of objection to the mode of procedure.

10 An. 20, 18 An. 65, 31 An. 679.

It is admitted that the only two items in dispute between the Board and Thelan are:

First—The item for changing eight inch valves on nine boilers, to bring same off boilers and butting on steam header, mechanics time and helpers; for which Thelan claimed $1350, and the Board allowed him $450.

Second—Taking down old sixteen inch steam header, eighteen inch pipe from boiler to engines and holders, mechanics time and helpers, for which Thelan claimed $616, and the Board allowed him $169.97.

The amount in dispute is, therefore $1346.03.

Thelan testified to the correctness of his claim by referring to a book in which he made, every week, entries based on information furnished him by his foreman.

Then was not on the scene all of the time, though he says he was there most of the time. He did not know the facts and could not assert that the statement was true, merely that he believed the bill to be correct because he had confidence in his foreman. The foreman was not produced as a witness. An objection made to Thelan's use of the book and to his testimony based thereon was overruled and a bill reserved. The ruling was erroneous.

"Where the witness neither recalled the fact, nor remembered to have recognized the written statement as true, and the writing was not made by him, his testimony; so far as it is founded upon the written paper, is but hearsay; and a witness can no more be permitted to give evidence of his inference from what a third person has written, than from what a third person has said."

1 Greenleaf on Ev. p. 486.

The testimony should have been excluded and we shall not consider it. Jules Simmon, an employe of the Board and an engineer, who was on duty at the Central Power Station during the time Thelan was working on the header, kept, under instruc-

325

tions, a book in which he entered every day, the time of the men engaged in the work. His report gives the names of the workmen and shows that during the months of October, November and December, the machinists worked 128 hours and the laborers 410 hours.

Kirkland, another engineer of the Board in charge of the matter, basing himself on Simmon's figures, allowed Thelan 128 hours of mechanics at 35 cents per hour, total, $44.80, and 410 hours for laborers at 18 1-3 cents per hour, total, $75.17, for a foreman and as profit on the work he allowed $50 more.

These figures aggregate $169.70, the amount tendered by the Board for the header.

As to the first item (i. e. changing valves on boilers), Kirkland says he allowed $450, in accordance with the custom, which is to pay the cost of the work and a margin of about 15 or 20 per cent for the profit, when no price has been agreed upon in advance.

Robert E. Lee, a well-known machinist to whom the Board submitted Thelan's charges for an opinion, testifies that a fair remuneration for removing the boilers would be $375, and that $75 more would be a liberal profit.

Other witnesses corroborate the views of Kirkland and Lee, at least to the extent that it should have taken less working time and fewer workmen than Thelan claims. Certain witnesses say that Thelan's work was worth the amount he charged and even more, for instance, one, Cunningham thinks that Thelan was entitled to $25 a day for supervision; another, Gueydan, states that he would not have done the work for less than $10,000, and a third, McCorkingdale; that the charge was moderate, though he could and did not make any specific calculation or estimate.

Such testimony refutes itself by proving too much, and it is clear that, if the trial judge had placed any reliance upon it, he would have allowed Thelan's claim in full instead of allowing merely $75 more than the Board tendered.

The same may be said of Thelan's testimony; though the district judge states that he had "a firm belief in his trouble and integrity," he does not appear to have been strongly impressed with the strength of his recollection and the correctness of his estimates.

It is urged by Thelan's counsel that Lee's estimates was based on contract work and that extra or job work is always more liberally remunerated. As a general proposition, this is true, but this consideration cannot, in this case have a controlling influence for the reasons that Thelan and his men were then enengaged on the other, that, with perhaps a single exception, the tools were already on the spot and that no time limit was specified for the termination of the work. It is also claimed that the work was difficult and heavy, when one undertakes an enterprise of this character, he is presumed to have the necessary tools and competent workmen. As is aptly said by one of the witnesses: "That expression 'heavy' is comparative; I should not call that very heavy work; it is heavy work, but you have appliances, block and tackle, to handle the heavy work and, if properly used, these appliances make the work simple and not difficult."

The fact that Thelan originally suggested the improvements that were made is not a factor tending to enhance the value of his remuneration, because it is not included among the items which form the basis of his suit. The full opinion of the district judge on this branch of the case is briefly expressed as follows:

"As to Thelan's claim against the Sewerage and Water Board, the evidence satisfies me that the engineers have made proper allowance for the extra work, except that I think he should receive $75 more for his services which were arduous and difficult."

Our appreciation of the testimony as a whole has led us to the conclusion that the amount tendered by the Board makes fair and sufficient provision for a legitimate profit and that he is not entitled to more. While we sympathize with him because he appears, through carelessness of calculation in his bids and estimates, to have lost money on his contract, we may not properly allow him to recoup himself, in the suit on a *quantum meruit,* out of funds entrusted to a public board for public purposes.

We now pas to the controversy between Thelan and the Fairbanks Company. When Thelan sought to introduce evidence in support of his reconventional demand, objection was made to his offer, but the Court allowed him to amend his an-

swer and assigned the following reasons for its ruling.

"The amendments were germane to the subject matter, viz: the settlement of all claims and counter claims of the parties against the fund ...... The object was to avoid a multiplicity of suits. The proceeding is a concursus, equitable in origin and character, involving the settlement of accounts ...... If one claim less than is due and do not amend his claim, he shall lose the overplus, and amendments in furtherance of justice are favored. xxx"

In affirming this ruling we may say that an appellate Court is reluctant to control the exercise of the discretion vested in the trial judge by law, and will not disturb his finding, unless it be clearly arbitrary and it deprived the adverse party of some substantial right or means of defense.

During the course of the trial, Thelan's counsel pleaded in peremptory bar an exception to the effect that the claim had been extinguished by payment of $3600 to the Fairbanks Co. through the Clerk of Court, and that said Company. is barred from asserting its claim for the balance because it was agreed "that the claim should be paid out of the price of his contract with the Sewerage and Water Board and should be subject to his approval and, instead of approving it, that exceptor has declined to do so, and fhat he disapproves, disputes and rejects it as incorrect and not due."

There is no merit in the plea.

In the first place, the money was paid "without prejudice to any of the rights and claims of the parties to this case," under an order of Court based on joint motion of all the litigants.

In the next place, so far as Thelan's approval may be viewed as a condition precedent, it means that his refusal to approve be reasonable and not arbitrary. As this is the very issue now before us, the exception amounts to nothing more than a begging of the question.

In the present condition of the record and, as a natural consequence of the arguments of counsel, it is useless to consider the original claim of the Fairbanks Co. and we may restrict our attention to the issues presented by Thelan's counterclaim or reconventional demand.

Before entering into a discussion of the account, it may be

328

well to state that we see no reason for indulging in sweeping assertions as to the motives and the conduct of the litigants.

That the Fairbanks Co. was careless and negligent in various respects in the execution of its contract may not be denied, but we do not think its conduct is deserving of the "use of harsher terms."

That Thelan may have intended to tell the truth, we shall not question, but his confused recollection, his peculiar methods of making entries and memoranda in his note books and his inaccuracies as to figures and dates seriously impair the value of his testimony.

His course does not appear to have been very candid, he refused to approve the bills about which there was then and there is now no dispute, and he failed to make complaints as to several matters until months after the occasion arose, and when the exigencies of his suit may naturally have suggested them.

The statement of the counterclaims is as follows:

|  |  |  |  |
|---|---|---|---|
| 1. | Freight overcharges 4 cars .............. | $28.00 | |
| 2. | April 18, freight for 40 flanges .......... | 5.00 | |
| 3. | March 18 Boxing ...................... | 25 | |
| 4. | Labor, loading cars .................... | 13.40 | |
| 5. | Drayage charges ............. ......... | 7.15 | |
| 6. | July 21, Freight for 6 kegs of bolts........ | 1.50 | 55.30 |
| 7. | March 25, Flangs, E. H. 12x20, to replace sleeve ...... ........ ...... ...... | 45.00 | |
| 8. | 5 Copper gaskets, 12-inch .....:........ | 7.65 | |
| 9. | 5 Sleeves, 12 inch .................... | 15.00 | |
| 10. | April 25, Machine bolts, overcharges ..... | 2.44 | |
| 11. | May 15, Running over 44 12-inch threads.. | 22.00 | |
| 12. | May 23, 4 sleeves, 12-inch ................12.00 | | |
| 13. | Received only 81 feet of 12-inch pipe..... | 54.43 | |
| 14. | 12 12-inch pipe thread, overcharges...... | 16.50 | |
| 15. | Aug. 20, 4 8-inch sleeves not received...... | 6.40 | |
| 16. | 2 8-inch pipe thread not cut ............ | 1.66 | |
| 17. | Rechasing 12 8-inch flangs ............. | 14.00 | |
| 18. | Drilling valve flanges, overchange ....... | 15.00 | 212.08 |
| 19. | Rechasing 1,100 machine bolts, 7-8x4 1-2 taking down pipes after test, flanges were not screwed up, screwing of flanges, shipping pipes flush of flange and butting pipes up again, loss of time for machinist and helpers .................. | | 980.60 |
| 20. | 28 new copper gaskets ........................ | | 42.84 |

$1,350.32

Items 1, 2, 3, 4, 5, 6.

Thelan says that the cars were not fully loaded and that the Fairbanks Co. should have waited for full loads before forwarding; this is not consistent with his complaint of too much delay in delivery. Beyond his own statement, he offers nothing to prove the above alleged overcharges. Madden, manager of the Fairbanks Co. says the cars were loaded under Thelan's instructions, that the charges made was the amount paid to the railroad, that the boxing was done to protect bolts from exposure, and that the other freight, labor and drayage charges are correct. It is further shown that the price of the estimates did not include the freight and this is corroborated by the fact that Thelan paid the freight on four cars.

These items are rejected.

Items 7 to 18 (both inclusive).

These items are allowed. Thelan testifies positively to their correctness and the witnesses for the Fairbanks Company enter merely a feeble denial or plead ignorance or inability to remember. The further trend of their testimony is to the effect that Thelan complained of the failure to deliver sleeves, that his claim of pipe shortage may be correct, that he complained that, after the pipe was screwed it leaked so in the threads that he was obliged to take it down and break the gaskets, and that he mentioned he was entitled to consideration because of the failure to deliver material within time to meet his needs.

Raymond, general manager of the drainage system, says:

"There were two or three things that interferred with his work; the first was that some of the pipes that were brought there with flanges on them, the flanges were not screwed up to the end of the pipe; they were extra heavy flanges and I measured them myself, most of them, and I told him they would not be permitted to be put up in the work. Some of them were as much as three quarters of an inch from being screwed up so that the pipe would come flush with the face of the flange.xxxxx There is a provision in the contract (i. e. with Sewerage Board) that he (Thelan) should work without interference with the operation of the drainage machinery; that was one of the causes of delay. That, and the fact that some of his men did not seem to expedite the work as they should have, they didn't seem to know how to go about as it appeared to me, they lost

330

time that way, xxxxx I do not think Mr. Thelan is as good an executive as he is a machinist."

Simmon, chief engineer of the power house, attributes the delays to the facts that Thelan's men stood idle at times, that, at other times, he could not get certain part of the machine while it was used for drainage and sometimes to misfits which had to be remedied. He corroborates Thelan as to some of the defects of some of the materials furnished by the Fairbanks Co., and estimates the cost of taking up and putting back the four sections of pipe at $300. He adds, however, that on occasions the Board's employees helped Thelan.

Wood, Raymond's assistant, likewise testifies to the existence of certain defects.

We agree with the district judge in the following statement found in his opinion:

"He (Thelan) testifies affirmatively that the Fairbanks Co. saw the specifications and that his orders for materials were based thereon. They knew that the material was to be installed at the Central Power House of the Drainage System. They must be held to knowledge regarding the general plan. xxxxx Therefore, when witnesses for the Fairbanks Co. deny that Thelan's orders were based on the specifications of the contract with the Sewerage and Water Board, I think they have forgotten, and I accept the affirmative evidence of Thelan to the contrary, backed up as it is by all the reasonable probabilities of the case."

Though Thelan furnished a list of time and labor aggregating $980 claimed as damages, it is clear that the district judge did not believe it to be correct, as he reduced it to $750.

The estimate is based on alleged "contemporaneous memoranda" which found their way to a book to which he referred and as the district judge says, "he put down his memoranda of the hours of work in some instances without the dates and when it became necessary to fix dates, he got the calender of the wrong year and had to change the entry in that respect. So peculiar a mode of bookkeeping does not commend itself as a help to the memory of a witness even on the theory of "association of ideas," so earnestly expounded by Thelan's able counsel.

Another remarkable feature of the case is that Thelan says that he had one man employed, for seven, eight or nine months

at $1.65 per day, rechasing bolts, the price of which was about $65. Thelan is undoubtedly entitled to recover damages, but the confusion of the record, due mainly to his own testimony, makes the attainment of a precise result impossible and makes the matter one of approximate solution.

After mature deliberation, we have concluded to allow him on his whole counterclaim the sum of $600 as adequate for the purpose of substantial justice between the parties.

We have labored patiently in the examination of the voluminous record, but have referred only to the salient points of the case, a more minute reference to the details would have compelled an opinion of unnecessary and unreasonable length.

The judgment appealed from is amended so as to read as follows:

It is ordered, adjudged and decreed that there be judgment in favor of Peter Thelan for the amount deposited by the Sewerage and Water Board in the registry of the Court, the costs of the litigation between Thelan and said Board to be paid by said Thelan.

It is further ordered, adjudged and decreed that there be judgment in favor of Conrad Kolb and against Peter Thelan for the sum of six hundred dollars with 5 per cent per annum interest from August 10th, 1903, with costs and with recognition of his right of pledge and assignment upon the funds deposited in the registry of the Court, to be paid second in rank to the Fairbanks claim.

It is further ordered, adjudged and decreed that there be judgment in favor of the Fairbanks Co. for ($1356.94) thirteen hundred and fifty-six 94/100 dollars less ($600) six hundred dollars, decreed in favor of Peter Thelan for damages as per his reconventional demand, which is sustained to this extent, costs of the demand of the Fairbanks Co. to be paid by Thelan and costs of the reconventional demand to be paid by the Fairbanks Co. both claims to have legal interest from date hereof, with privilege over all creditors after costs of the Sewerage Board are paid.

It is further ordered, adjudged and decreed, that all other demands of the parties to this concursus be dismissed and that the funds deposited in Court by the Sewerage and Water Board

be distributed among the parties hereto in accordance with this judgment.

It is further ordered, adjudged and decreed that the award herein made by the arbitrators be and the same is hereby annulled and set aside. It is further ordered that the costs of this appeal be paid by Peter Thelan.

May 6, 1907.

Writ refused by Supreme Court June 11, 1907.